ANTHONY A. MASSIE,

        Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No. 21-cv-1348-pp

SHERIFF BETH, CHIEF DEPUTY LEVIN,
LT. BERANIS, SGT. SIMPSON,
SGT. JSCHROEDER, SGT. REINERSMAN,
SGT. GREY, and CPL. STAUCHE,

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4) AND SCREENING COMPLAINT**

      Plaintiff Anthony A. Massie, who is currently incarcerated at Jackson Correctional Institution and is representing himself, filed a civil rights complaint under 42 U.S.C. §1983 alleging that the defendants violated his civil rights. Dkt. No. 1. He also filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 4. This order resolves the motion for leave to proceed without prepaying the filing fee and screens the complaint.

      The case currently is assigned U.S. Magistrate Judge Stephen C. Dries. Although the plaintiff has filed the required form indicating whether he consents to a magistrate judge deciding the case, the defendants have not yet had the opportunity to decide whether to consent because, until now, the court had not screened the complaint and decided whether it should be served on the defendants. Because the defendants have not yet filed their consent form, the

1

clerk's office has referred the case to this district judge to screen the complaint and decide whether it should be served on any of the defendants. The court will explain which claims the plaintiff has stated against which defendants, then it will return the case to Judge Dries for further proceedings

**I.     Motion for Leave to Proceed Without Prepaying the Filing Fee**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On December 15, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $3.87 by January 17, 2022. Dkt. No. 10. The court received that fee on December 30, 2021. The court grants the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

  A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or

employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824,

3

827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. Plaintiff's Allegations

When he filed his complaint, the plaintiff was in custody at the Kenosha County Detention Center. Dkt. No. 1 at 21. The plaintiff has sued Sheriff Beth, Chief Deputy Levin, Lt. Beranis #220, Sgt. Simpson #1242, Sgt. J Schroeder, Sgt. Reinersman #1571, Sgt. Gray #12000 and Cpl. Stauche #1378. Id. at 1, 19.

The plaintiff alleges that on May 18, 2021, he transferred from the Kenosha County Jail to the Kenosha County Detention Center, and he "didn't want to enter general population housing" because "of unsafe conditions of the facility." Dkt. No. 1 at 2. On May 27, 2021, he was placed in administrative segregation because of his "inability to cohabitate with others." Id. On June 16, 2021, the plaintiff informed defendant Sgt. Reinersman "of the same," but the plaintiff says that none of the conditions changed, "ignoring [his] need for safe and equal protection." Id. at 2-3.

The plaintiff says that on June 6, 2021, he told Cpl. Gillett that he wanted to be in protective custody because he was afraid for his safety and because in 2010 he cooperated with police in a murder case against another person while he and that person were incarcerated together at the Kenosha County Detention Center. Id.

4

On August 16, 2021, while housed on the Administrative Segregation Unit-H East, the plaintiff was attacked by an incarcerated person named Smith who threw hot, microwaved coffee in the plaintiff's face. Id. at 3. The plaintiff states that another incarcerated person, Waldow, told Smith to attack the plaintiff because the plaintiff informed a guard named Knight that Waldow was "saling prescribed psychological medications." Id. Defendant Sgt. Grey, who "supervised over the incident," "deliberately ignored removing [the plaintiff] from his cell and take him to the medical unit to address his burns. Id. The plaintiff thinks that he was treated this way because it was jail policy for him to fill out a medical co-pay request form, which would have revealed the seriousness of the incident. Id.

On August 17, 2021, the plaintiff filed a grievance about Smith's assault, which was returned to him; someone had written in red ink "please submit this grievance on the kiosk, what are you grieving," but there was no signature of any administrative official. Id. at 3-4. The plaintiff says that this response ignored the fact that on July 26, 2021, Sgt. Reinersman told him that his grievances had been received, were being reviewed and would be responded to. Id. Again, the plaintiff believes he was treated this way to keep the facts from becoming known. Id. He asserts that on August 16, 2021—the day of the assault by Smith—administrative officials did not give him access to "professional procedures" that are available to victims of assault. Id. at 4.

On August 27, 2021, Sgt. Reinersman was supervising the use of pepper spray for another incident. Id. In the process of keeping other incarcerated persons away from the pepper spray, Reinersman allowed several incarcerated persons on the administrative housing unit, including the plaintiff, to mingle with incarcerated persons in general population without being handcuffed or wearing body restraints, as required. Id. The plaintiff, however, does not allege that he suffered any harm or was otherwise injured during these events. He says, however, that Sgt. Reinersman "set as a lone administrative official deliberately concerning the complaint and exonerated himself of any wrongdoings, concerning the August 27, 2021 incident." Id. at 6.

The plaintiff also alleges that when he was transported for court, he was deliberately placed in vehicles with incarcerated persons from the general population. Id. at 5. The plaintiff does not allege that he was injured or harmed by this placement, but he believes he was treated this way because there was a jail policy of placing him "in such a inviornment." Id.

In September 2021, administrative officials moved other incarcerated persons who had tested positive for COVID-19 to the plaintiff's housing unit. Id. at 13. The plaintiff alleges that he never had been vaccinated, yet he was moved with the infected persons (who were from general population) to a different unit. Id. He says the infected persons were showering together, with no disinfecting or cleaning taking place. Id. The plaintiff does not allege that he contracted COVID-19 or was otherwise harmed as a result of this placement.

6

On October 12, 2021, Sgt. J. Schroeder told the plaintiff that because the plaintiff said that his housing was dangerous and he was in fear for his safety, officials had decided to move the plaintiff to a single cell on administrative status in H-West, the plaintiff says this was actually a disciplinary confinement unit. Id. at 10. He alleges that on October 19, 2021, while he was handcuffed to the wall in the multipurpose room, Smith—the person who had assaulted him in August—was let out into the area with no handcuffs on by a guard named Gonzalez. Id. at 10-11. The plaintiff states that Smith was often allowed out without restraints on, which made the plaintiff afraid and psychologically distressed. Id. at 11.

Also on October 12, 2021, Sgt. J. Schroeder told the plaintiff that if he needed "some sort of special accommodation" for his mental health needs and privacy, he needed to write to medical. Id. at 11. The plaintiff believes that this constituted a unit guard and jail official putting himself in the position of deciding the plaintiff's medical needs. Id. at 11-12. He thinks he was treated this way because he previously had written to psychological specialists via medical form, telling them of having nightmares of incarcerated persons being put in his cell to kill him in his sleep. Id. at 12.

The plaintiff asserts that he has filed several grievances throughout 2021 for various incidents including the August 16 assault, the August 27 use of pepper spray and all the times detention center staff did not honor his housing needs, specifically failing to place him in a single cell. Id. at 6-10, 14-15. The

7

plaintiff alleges that many of those grievances have gone unanswered or were denied because of conclusions that the officers did not violate any rules or procedures. Id. at 6-10, 14-15.

Essentially the plaintiff claims that the institution purposely erected obstacles to prevent him from using the grievance system. Id. The plaintiff states that defendants Sgt. Simpson, Lt. Beranis and Cpl. Stauche were aware that staff were deliberately ignoring his various grievances. Id. at 6. He also alleges that detention center staff were preventing him from getting his grievances addressed by a court. Id. at 7. The plaintiff alleges that detention center staff were deliberately not responding to his grievances in order to prevent his concerns from being "brought forth." Id. at 8-9. The plaintiff includes a two-page list of all the inmate complaints he says he turned in, the date and time he handed them in, and the person to whom he gave them. Id. at 14-15. The plaintiff alleges that by ignoring his grievances, detention center staff violated his First, Fifth, Eighth and Fourteenth Amendment rights. Id. at 15, He states that due to having his grievances about his housing placements and conditions deliberately ignored, he has been experiencing increased nightmares and physiological harm. Id. at 16.

The plaintiff seeks $250,000 in damages for harm he already has sustained and $50,000 because he "might incur psychological harm in the future." Id. at 20. He also seeks to prevent detention center staff from placing

incarcerated persons who seek protective custody with general population inmates. Id.

   C.   Analysis

The plaintiff's twenty-one-page complaint is convoluted and rambling, jumping from one incident to another out of chronological order. Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must provide a "short plain statement of the claim showing that [he] is entitled to relief." A plaintiff should not plead every fact supporting his claims; he needs only to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). There is a reason that the rule specifies a "short and plain" statement. "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." U.S. ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003). "[L]ength may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter." Kadamovas v. Stevens, 706 F.3d 843, 844 (7th Cir. 2013) (quoting U.S. ex rel. Garst, 328 F.3d 374, 378 (7th Cir. 2003)).

The complaint also appears to allege several different violations against different groups of defendants. He alleges that some defendants ignored his pleas for safe housing and his concerns that his safety was at risk; he says he often was placed with persons from general population. He says a defendant

9

allowed him to be assaulted by another incarcerated person. He says staff placed him in proximity with persons infected with COVID-19 when he was not vaccinated and that staff did not provide adequate cleaning. He says that staff prevented him from using the grievance process. The law allows a plaintiff to bring multiple claims against a single defendant, but he cannot bring unrelated claims against different defendants in the same case. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). A plaintiff may sue multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Id.; Wheeler v. Wexford Health Services, Inc., 689 F.3d 680, 683 (7th Cir. 2012)). The plaintiff's attempt to allege different claims against different defendants—assuming the court is able to determine which defendants he believes committed which violations, which often it cannot—violates Rules 18 and 20.

But courts must construe a self-represented plaintiff's pleadings liberally. Cesal, 851 F.3d at 720 (citing Perez, 792 F.3d at 776). The plaintiff appears to have stated one cognizable claim. He alleges that Sgt. Grey failed to take him to get medical treatment for his burns after Smith's August 16, 2021, assault. It is unclear whether the plaintiff was a pretrial detainee at the time this happened. If he *was* a pretrial detainee, his rights arise out of the Fourteenth Amendment's Due Process Clause; if he was a convicted person, his

rights arise out of the Eighth Amendment. See Miranda v. Cty. of Lake, 900 F.3d 335, 350-51 (7th Cir. 2018) (explaining that an objective reasonableness standard applies to claims brought by pretrial detainees while a deliberate indifference standard applies to claims brought by prisoners). The court need not determine at this time whether the plaintiff was a pretrial detainee or a convicted person, because the Eighth Amendment standard is the more stringent one. The court will analyze his claim under that standard.

A prison official violates the Eighth Amendment where he is deliberately indifferent "to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "To state a cause of action, a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010). At this stage, the plaintiff has stated sufficient facts to demonstrate that his burns from scalding coffee were an objectively serious medical condition.

Regarding the second prong, a plaintiff must allege "that an official *actually* knew of and disregarded a substantial risk of harm." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The plaintiff alleges that Sgt. Grey witnessed the attack and did nothing for the plaintiff's injuries.

11

Other than the claim against Sgt. Grey, the plaintiff fails to state any additional claims. The plaintiff's claims regarding various defendants and unnamed detention center staff frustrating his use of the grievance system is not a constitutional violation. A plaintiff who "has alleged that the defendants frustrated his use of the grievance system . . . has no free-standing claim on those grounds. '[A] state's inmate grievance procedures to not give rise to a liberty interest protected by the Due Process Clause" of the Fourteenth Amendment. Williams v. IDOC, No. 18-cv-087, 2018 WL 1709712 at *4 (S.D. Ill. Apr. 9, 2018) (quoting Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)).

The plaintiff does not state a claim against Sgt. J. Schroeder for directing him to speak to the medical department to get psychiatric treatment because J. Schroeder is permitted to direct an inmate to the appropriate department to get his needs met. See Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) ("Public officials do not have a free-floating obligation to put things to rights. . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job.").

Also, it is not enough for the plaintiff to state that various defendants violated his First, Fifth, Eighth and Fourteenth Amendment rights without providing some details—such as who violated them, when they violated them, and how they violated them. While courts are to liberally construe *pro se* plaintiffs' complaints, courts cannot "accept as adequate abstract recitations of

12

the elements of a cause of action or conclusory legal statements." Twombly, 550 U.S. at 570.

The plaintiff cannot proceed on his claims that various named and unnamed officials failed to protect him (from being housed with persons in general population, from being housed with persons infected with COVID-19) because he has not alleged that he suffered any damage or harm from these incidents. For a plaintiff to success on a claim under §1983, he "must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages.'" Lord v. Beahm, 952 F.3d 902, 905 (7th Cir.2020) (quoting Gabb v. Wexford Health Sources Inc., 945 F.3d 1027, 1032 (7th Cir. 2019)) (emphasis in original). The plaintiff alleges that Reinersman allowed him and other incarcerated persons in administrative segregation to mingle with incarcerated persons from the general population, but he does not allege that he suffered any harm or injury as a result. The plaintiff alleges that he was transported with persons from general population, but he does not allege that he was harmed or injured as a result. The plaintiff further alleges that at one point in October 2021, he was cuffed in the multipurpose room while Smith—who had assaulted him two months earlier— was allowed into the area unrestrained, but he does not allege that Smith attacked him or that he was in any way was injured or damaged. The plaintiff alleged that he was housed with incarcerated persons who had tested positive

for COVID-19, but he does not allege that he contracted COVID-19 or was otherwise harmed.

The court will dismiss all defendants except Sgt. Grey because the plaintiff failed to state a claim against them. Although courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so where the amendment would be futile. See Boyd v. Bellin, No. 20-3087, 2021 WL 479769 (7th Cir. Feb. 10, 2021). Given the rambling nature of the plaintiff's complaint, the court thinks it unlikely that he could remedy the deficiencies the court has identified by amending it. The plaintiff successfully stated one claim. If the plaintiff has other claims against other defendants, he may file separate lawsuits against those defendants.

### III. Conclusion

The court **ORDERS** that that that the plaintiff's motion for leave to proceed without prepaying the filing fee is **GRANTED**. Dkt. No. 4.

The court **ORDERS** that defendants Beth, Levin, Beranis, Simpson, Jschroeder, Reinersman, and Stauche are **DISMISSED**.

The court **ORDERS** that the U.S. Marshals Service shall serve a copy of the complaint and this order upon defendant Sgt. Grey under Fed. R. Civ. P. 4. The plaintiff is advised that Congress requires the Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the Marshals Service, it has not made any provision for these fees to be waived either by the court or by the Marshals

14

Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** that defendant Grey must file a responsive pleading to the complaint.

The court **ORDERS** that the agency having custody of the plaintiff must collect from his institution trust account the **$346.13** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to his trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments must be clearly identified by the case name and number assigned to the case. If the plaintiff is transferred to another county, state, or federal institution, the transferring institution must forward a copy of this order along with his remaining balance to the receiving institution.

The court will send a copy of this order to the Warden of the Jackson Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge

15

to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he does not file documents or take other court-ordered actions by the deadlines the court sets, the court may dismiss the case for his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the dismissal of the case without further notice.

The court is enclosing a guide prepared by court staff to address common questions that arise in cases filed by prisoners, "Answers to Prisoner Litigants' Common Questions." This guide contains information that the plaintiff may find useful in prosecuting his case.

---

Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

16

Case 2:21-cv-01348-SCD   Filed 10/03/22   Page 16 of 17   Document 17

The court **RETURNS** this case to Judge Dries for further proceedings.

Dated in Milwaukee, Wisconsin this 3rd day of October, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
